OPINION. Black, Judge: The primary issue in this case is whether certain rental payments received by the company, a partnership, during its fiscal years ending January 31, 1952 and 1953, which were allowed as a credit against the option (purchase) price of rental equipment are section 117(j) proceeds from the sale of such rental equipment, as the petitioners contend, or are merely rental income from such equipment prior to its sale, as the Commissioner has determined in his deficiency notice. The respondent concedes that the final payment made when the option to purchase was exercised (but only that amount) constitutes section 117(j)[2] proceeds. The partnership of E. L. Lester & Co. kept complete records of its receipts and disbursements. As to that the Commissioner makes no complaint. The Commissioner’s complaint arises as to the company’s manner of treating the rental payments which it received. The partnership of which petitioner was a member was in the business of renting machinery and equipment to others. It also was in the business of selling machinery and equipment. However, its main business was that of renting machinery and equipment to others. As to that both parties seem to agree. During the taxable years 1952 and 1953, the company sold some machinery and equipment which it was holding primarily for sale. As to these sales there is no dispute. The dispute arises as to the treatment by the company of rental payments received. That treatment may be summarized as follows: At the end of the fiscal years ended January 31, 1952 and 1953, the amounts received by the company on the units of equipment not sold during the year were reported as rental income. The company, on all units of equipment sold, treated all payments received from the lessees, from the date of the rental agreement, as part of the purchase price on the sale of depreciable property. The company reduced the rental income account in each of the fiscal years ended January 31, 1952 and 1953, by the amounts credited to the rental income account from the 90 units of equipment prior to their sale. The company, on its tax returns, claimed depreciation on the 90 units of equipment up to the date of the “final billing.” In determining whether the company had held the units of equipment more than 6 months for the purpose of determining long-term capital gains, the “final billing” date was considered as the date the company’s holding period terminated. This date was listed on the company’s tax returns as the date the unit of equipment was sold. The company reported long-term capital gains on the 90 units of equipment sold during the fiscal years ended January 31, 1952 and 1953, in the amounts of $31,987.57 and $30,139.45, respectively. The respondent’s position is that the sale of the units of rental equipment took place when the option to purchase was exercised under rental-purchase agreements, or when negotiations produced a sale under straight rental agreements. The amounts received up to the date of the “final billing” are rental income and not part of the purchase price. Respondent contends this was the intention of the parties and that the company is now seeking to rewrite its contracts. Respondent made his adjustments shown in the deficiency notice in accordance with the foregoing contentions. To begin with, it may be pointed out, as we understand it, that in prior years the company treated the payments received on its rental contracts pretty much the same as the Commissioner contends they should be treated in the taxable years which we have before us. But in its fiscal year ending January 31, 1952, the company changed its method of handling these transactions and adopted the method for which it now contends and it has followed that method down to the present time. Undoubtedly, if the method used by the company in years prior to the ones we have before us was wrong, it had the right to change it. The Commissioner does not contend otherwise. But was the company’s prior method wrong and is its present method correct? That is the question which we must decide based on the facts which we have before us and the applicable law. Petitioner had as one of his witnesses at the hearing an accountant of long training and experience. The substance of his testimony was that if the method used by the company in the 2 years which we have before us is used consistently over a period of years, it will correctly reflect the income of the company. But methods of accounting do not solve the problem taxwise which we have before us. Cf. Curtis R. Andrews, 23 T.C. 1026. It is rather the agreement and intention of the parties that determine the nature and character of the payments in question. It is true, of course, that all the proceeds of the company’s business were reported by the method of accounting adopted by it, but the question before our Court is whether these rental payments received prior to the exercise of the option to purchase are to be reported as rents and therefore ordinary income as the Commissioner contends, or as capital payments as the petitioner contends. The answer to this question depends upon applicable law and regulations rather than on what some might term “good accounting practice.” In Chicago Stoker Corporation, 14 T.C. 441, where we held that payments made during each of the taxable years were purchase price of a business in which the taxpayer was acquiring an equity and were not expenses deductible as made, we said: Cases like this, where payments at the time they are made have dual potentialities, i.e., they may turn out to be payments of purchase price or rent for the use of property, have always been difficult to catalogue for income tax purposes. A fixed rule for guidance of taxpayers and the Commissioner is highly desirable, and it is also desirable that the rule, whatever it is, he as fair as possible, both to the taxpayer and the tax collector. * * * In their respective briefs both parties cite and discuss many cases which have dealt with one phase or the other of the problem. We do not think it would be helpful to take up and discuss these various cases and undertake to decide on which side of the line they fall. We think it is sufficient to say that, in our opinion, a study of these cases discloses that the principle extending through them is that where the “lessee,” as a result of the “rental” payment, acquires something of value in relation to the overall transaction other than the mere use of the property, he is building up an equity in the property and the payments do not therefore come within the definition of rent contained in section 23 (a) (1) (A). D. M. Haggard, 24 T.C. 1124. On the other hand, if the parties actually intend to enter into a lease contract containing an option to purchase, with normal rentals to be paid thereunder, then the lessee, up until the time he exercises his option to purchase, acquires no title to or equity in the property. What he has paid as rent up until he exercises his option to purchase is rent and should be treated as such in dealing with his tax liability. Benton v. Commissioner, 197 F. 2d 745. We have carefully examined and considered the evidence in the instant case and it seems to us to show that the customers who rented the equipment from the company in the taxable years intended to rent it. What they paid the company prior to the exercise of the option to purchase was rent and was so understood by the parties. In some cases the rental contract contained an express provision permitting the lessee an option to purchase and when the option to purchase was exercised, to have the rentals theretofore paid apply as a part of the purchase price. In other cases there was no express option to purchase but a mere rental contract. However, the testimony as to these latter-described contracts is to the effect that there was an implied right in all of them of the lessee to purchase and have the rentals apply to the purchase price. Therefore, in our decision on the primary issue here involved we shall treat the rentals under both classes of contracts in the same manner. But we do not think that the company, in computing its income from these transactions, has any legal right to treat the rental payments as part of the purchase price until the option to purchase has been exercised. When that event takes place, the final payment is, of course, a capital payment and the Commissioner has so treated it. We agree with the Commissioner, however, that, although under the terms of the agreement, when the option to purchase was exercised, the rental payments theretofore made were treated as payments on the purchase price, this fact does not convert the rental payments theretofore made into capital payments for tax purposes. We sustain the Commissioner in his manner of treating these rental payments. Altemati/oe Contention. In the event that we should decide the primary issue against them, the petitioners raised an alternative issue which is to the effect that the rental payments made to the company in the current taxable years should not be taxed until their correct nature as rental income or sales proceeds can be determined in a future year when the option to purchase is either exercised or forfeited by the renter-purchasers. We think this alternative contention is without merit. What we have held in deciding the primary issue is that the rental payments were ordinary income when received by the company and are income in the year when received. Their character was not changed when the lessee exercised his option to purchase. That is the very essence of our holding. The principle is well established that each taxable year is a separate unit for tax-accounting purposes. United States v. Lewis, 340 U.S. 590; North American Oil Consolidated v. Burnet, 286 U.S. 417; Burnet v. Sanford & Brooks Co., 282 U.S. 359. Petitioners’ alternative contention is not sustained. Lengthy schedules are attached to the stipulation of facts which show relevant data with respect to each of the 90 units of equipment which are involved in the controversy between the parties. We have not set out these schedules in our findings because to do so would lengthen the findings and we do not think it is necessary. The schedules have been incorporated in our Findings of Fact by reference. What we have held as to rental payments and purchase price payments as to the 90 units of equipment included in these schedules should be given effect in a recomputation under Bule 50. Also, depreciation should be computed to the date of sale, which date was the date when the option to purchase was exercised. Up until that time the company was the owner of the equipment — we do not understand that respondent contends otherwise. Decision will be entered wider Bule 50. SEC. 117. CAPITAL GAINS AND LOSSES. (3) Gains and Losses Prom Involuntary Conversion and From the Sale or Exchange op Certain Property Used in the Trade or Business. — . (1) Definition op property used in the trade or business. — For the purposes of this subsection, the term “property used in the trade or business” means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, heldl for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B)j property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *